(No. 76074.

JOHN ZEDELLA, Appellee, v. DANIEL J. GIBSON
*et al.* (Robert Gibson, Appellant).

*Opinion filed April 20, 1995.*

Paul R. Lynch and Melissa S. Ellison, of Craig & Craig, of Mt. Vernon, for appellant.

Don E. Prosser, of Gilbert, Kimmel, Huffman & Prosser, Ltd., of Carbondale, and Glenn A. Schwartz, of Schwartz, Freidin & Associates, of Chicago, for appellee.

JUSTICE MILLER delivered the opinion of the court:

Plaintiff, John Zedella, brought an action in the circuit court of Jackson County seeking to recover for injuries he sustained in an automobile accident. In one count of his amended complaint, Zedella sought recovery under a negligent entrustment theory from the father of the driver of the car in which Zedella had been riding. The circuit court granted the father's motion to dismiss that portion of the complaint. With one justice dissenting, the appellate court reversed the dismissal order and remanded the cause for further proceedings. (248 Ill. App. 3d 777.) We allowed the father's petition for leave to appeal (145 Ill. 2d R. 315(a)), and we now reverse the judgment of the appellate court.

The present case arises from an automobile accident that occurred in Carbondale on April 4, 1990. Zedella, a passenger in a 1987 Dodge Shadow vehicle being driven by Daniel Gibson, was injured when the Gibson vehicle collided with a vehicle being driven by Steven Grist. Zedella filed a complaint against the drivers of the two vehicles. Zedella later amended his complaint by adding Robert Gibson, Daniel's father, as a defendant. Zedella based his claim against Robert on a negligent entrustment theory. Specifically, count II of Zedella's first-amended complaint alleged that Robert Gibson was the owner of the automobile and had negligently entrusted its possession, use, and operation to Daniel. Alternatively, Zedella alleged that Robert was in control of the vehicle because Robert was a cosigner of the purchase money loan on the vehicle and provided financing and guarantees essential to its purchase, arranged and provided payment of insurance for the car, and retained the ability and means to deny Daniel access to the car. Zedella further alleged that Robert knew or should have known that Daniel was a dangerous and reckless driver, and in support of those allegations Zedella specified Daniel's prior traffic accident and his record of traffic convictions, including a conviction for the illegal transportation of alcohol and a disposition of supervision for driving while intoxicated. Zedella also alleged that Daniel was in violation of a number of traffic laws at the time of the accident.

Robert moved to dismiss count II of Zedella's first-amended complaint pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—619). Robert asserted that he and Daniel were listed on the title of the vehicle as co-owners and that he therefore could not deprive his son of the possession and use of the car. Robert further argued that he never had control over the automobile and thus could not have entrusted it to his son.

An affidavit by Robert submitted in support of the dismissal motion set forth the following undisputed facts. At the time of the accident in 1990, Daniel Gibson was 23 years old, lived in Carbondale, and was a student at Southern Illinois University. Daniel kept the car at his residence in Carbondale. Robert lived in Wisconsin, owned a business in McHenry County, Illinois, and was not present at the time of the accident. Robert and Daniel were listed as co-owners on the title of the vehicle, purchased in May 1987. Daniel had asked his father to cosign merely to facilitate the purchase and loan agreement. Both intended that the vehicle was to be purchased, used, and possessed by Daniel. Robert did not participate in the negotiations for the purchase, and he did not provide any portion of the down payment. After the purchase, Daniel was responsible for making the payments on the loan and on the insurance for the vehicle. On a few occasions, however, Robert gave Daniel money to make such payments or made such payments directly on his behalf, either as a gift or for services rendered by Daniel in the family business.

In opposition to Robert's motion, Zedella submitted Robert's discovery deposition, together with a motor vehicle report from the Secretary of State setting forth Daniel's driving record. Among other things, the deposition described Daniel's employment in the family business, his ownership of a car prior to the vehicle at issue here, and Robert's knowledge of his son's driving record.

Following a hearing, the circuit court granted Robert's motion to dismiss count II of Zedella's first-amended complaint. In a written order, the circuit judge stated that "such a cause of action is too hernial to survive this Motion to Dismiss." The judge made the same ruling with respect to similar counts of negligent entrustment brought against Robert by the occupants of the other vehicle involved in the accident; their claims

are not involved in the present appeal. The trial judge later made the finding necessary under Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) to permit Zedella to prosecute an immediate appeal of the adverse ruling.

A divided appellate court reversed. The majority concluded that the allegations of the amended complaint stated a cause of action for negligent entrustment. (248 Ill. App. 3d at 781-82.) The court thought that Robert's assistance with the financing for the purchase was sufficient to demonstrate his control over the vehicle, and that an entrustment occurred at that time. The dissenting justice disagreed, believing that no cause of action for negligent entrustment had been stated because the co-owners had equal rights to use and possess the automobile. 248 Ill. App. 3d at 784 (Welch, J., dissenting).

The purpose of a motion to dismiss under section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—619) is to afford litigants a means to dispose of issues of law and easily proved issues of fact at the outset of a case, reserving disputed questions of fact for a jury trial. (Ill. Ann. Stat., ch. 110, par. 2—619, Historical & Practice Notes, at 662 (Smith-Hurd 1983).) Section 2—619(a)(9) allows dismissal when "the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim." (Ill. Rev. Stat. 1991, ch. 110, par. 2—619(a)(9).) In ruling on a motion to dismiss under section 2—619, the trial court may consider pleadings, depositions, and affidavits. (*Torcasso v. Standard Outdoor Sales, Inc.* (1993), 157 Ill. 2d 484, 486.) When supporting affidavits have not been challenged or contradicted by counter-affidavits or other appropriate means, the facts stated therein are deemed admitted. (*Kedzie & 103rd Currency Exchange, Inc. v. Hodge* (1993), 156 Ill. 2d 112, 116.) The question on appeal is "whether the existence of a genuine issue of ma-

terial fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." (*Kedzie & 103rd Currency Exchange*, 156 Ill. 2d at 116-17, citing 4 R. Michael, Illinois Practice § 41.9 (1989).) We believe that dismissal in this case was proper.

An action for negligent entrustment " 'consists of entrusting a dangerous article to another whom the lender knows, or should know, is likely to use it in a manner involving an unreasonable risk of harm to others.' " (*Teter v. Clemens* (1986), 112 Ill. 2d 252, 257, quoting 1 J. Dooley, Modern Tort Law § 23.01, at 513 (1977).) An automobile is not a dangerous article *per se* but may become one if it is operated by a person who is unskilled in its use. (See *Union Bank v. Kalkhurst* (1932), 265 Ill. App. 254, 259.) Thus, a person may be liable for negligently entrusting an automobile to one who the person knows or should know is incompetent, inexperienced, or reckless. See *Kosrow v. Acker* (1989), 188 Ill. App. 3d 778, 783; *Giers v. Anten* (1978), 68 Ill. App. 3d 535, 538; *Bensman v. Reed* (1939), 299 Ill. App. 531, 534.

In support of their respective positions, both parties cite the general rule of liability for negligent entrustment set forth in section 308 of the Restatement (Second) of Torts. Section 308 provides:

> "It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others." (Restatement (Second) of Torts § 308 (1965).)

Comment *a* to section 308 explains further:

> "The words 'under the control of the actor' are used to indicate that the third person is entitled to possess or use the thing or engage in the activity only by the consent of the actor, and that the actor has reason to believe that by withholding consent he can prevent the third person from

using the thing or engaging in the activity." Restatement (Second) of Torts § 308, Comment *a*, at 100 (1965).

Robert argues that liability under a negligent entrustment theory is barred by the undisputed fact that he and Daniel are co-owners of the vehicle and that, as between the two, Robert does not have a superior right to the possession or control of the vehicle. Robert asserts that, under section 308 of the Restatement, liability may not be found unless Daniel was entitled to possess or use the vehicle "only by the consent of" Robert. Robert contends that a co-owner has a full and equal right to the possession and use of the common property and that one co-owner may not deprive another co-owner of its possession or use. (See *Clark v. Covington* (1982), 107 Ill. App. 3d 845, 847; *Massman v. Duffy* (1947), 333 Ill. App. 30, 40.) Robert thus contends that he cannot be held liable for negligently entrusting the automobile to Daniel because, as a co-owner, Daniel enjoyed an equal, if not greater, right to its possession and use.

We agree with Robert that, from an examination of section 308 and comment *a*, entrustment must be defined with reference to the right of control of the subject property. In essence, if the actor does not have an exclusive or superior right of control, no entrustment of the property can occur. See *Neale v. Wright* (1991), 322 Md. 8, 19-21, 585 A.2d 196, 201 (affirming summary judgment in favor of co-owner wife who was not present at time of accident and did not have absolute or superior right to control operation of vehicle co-owned by driver husband); *Bahm v. Dormanen* (1975), 168 Mont. 408, 412, 543 P.2d 379, 382 (affirming summary judgment in favor of co-borrower defendant who was not present at time of accident and did not have exclusive or superior legal right of vehicle involved in accident).

We do not find an entrustment in any of the acts

cited by Zedella in support of his claim against Robert. Zedella first argues that, as the appellate court found, Robert's facilitation of Daniel's purchase of the vehicle by cosigning the purchase money loan in May 1987 was an entrustment. Zedella maintains that but for Robert's agreement to cosign the loan, Daniel would not have obtained the possession and use of the vehicle in question. The appellate court agreed with this argument, concluding that Robert's power to refuse to cosign for the loan, and thus prevent the sale from being consummated, established that the vehicle was in Robert's control, and that an entrustment occurred when Robert facilitated the purchase and then surrendered the vehicle to Daniel. (248 Ill. App. 3d at 781-82.) We do not agree.

We do not believe that Robert's power to refuse to cosign the purchase money loan constituted an exclusive or superior legal right of control over the vehicle, or that Robert's conduct in doing so amounted to an entrustment under our law. The conduct in the present case simply involved a parent who facilitated the purchase of a vehicle by cosigning a purchase money loan. This action is thus distinguishable from cases holding that a parent may be liable under a negligent entrustment theory for giving his or her child a car. See *Golembe v. Blumberg* (1941), 262 A.D. 759, 27 N.Y.S.2d 692 (plaintiff stated cause of action against father who gave car to adult son, known to be epileptic, who suffered a seizure while driving and caused injuries); *Vince v. Wilson* (Vt. 1989), 561 A.2d 103 (negligent entrustment found against grandaunt who funded purchase of car for grandnephew, knowing he had no driver's license and abused alcohol); but see *Shipp v. Davis* (1932), 25 Ala. App. 104, 141 So. 366 (father not liable for adult son's negligent operation of car given to son by father, despite father's knowledge that son was incompetent

driver); *Brown v. Harkleroad* (1955), 39 Tenn. App. 657, 287 S.W.2d 92 (same).

Similarly, the present case is also distinguishable from actions in which negligent entrustment is found in the sale of an automobile to an allegedly incompetent driver. See *Small v. St. Francis Hospital* (1991), 220 Ill. App. 3d 537 (court held cause of action may exist against dealer for selling car to unlicensed minor whose negligent driving caused injuries); but see *Tosh v. Scott* (1984), 129 Ill. App. 3d 322 (court upheld summary judgment in favor of defendant father who sold car to adult son whose negligent operation of vehicle caused injuries, despite father's knowledge at time of sale that son did not have driver's license, had a poor driving record, and abused alcohol).

In the present case, the defendant father neither gave nor sold the car to his son; Robert merely cosigned the loan that Daniel needed if he was going to buy this particular automobile. We believe that Robert's action in this regard was merely a link in the chain that facilitated Daniel's acquisition, and subsequent possession and use, of the vehicle, but did not itself constitute an entrustment. Robert never had possession of the vehicle. He did not help Daniel in the purchase negotiations, nor did he advance any money toward the down payment of the vehicle. Robert never intended to exercise control over the vehicle. Although Robert arranged for Daniel's insurance carrier, Daniel undertook the responsibility for making those payments.

Daniel, not Robert, had the superior right of control of the vehicle at the time of the purchase. Daniel was an adult, was a licensed driver, had a residence away from home, and provided some means of support for himself. Daniel negotiated the purchase, made the down payment, traded in his old car, and undertook the responsibility for making the loan and insurance pay-

ments. On this record, which is undisputed by the plaintiff, we must conclude that Robert's action in co-signing the loan did not amount to an entrustment of the vehicle.

As a general matter, one co-owner does not have a superior right of control over a vehicle compared to another co-owner. (See *Neale v. Wright* (1991), 322 Md. 8, 585 A.2d 196; see also *Clark v. Covington* (1982), 107 Ill. App. 3d 845; *Massman v. Duffy* (1947), 333 Ill. App. 30.) Nonetheless, Zedella argues that an entrustment may be found in Robert's conduct after the purchase of the car, and we now examine the instances of conduct cited by him as proof of Robert's continuing control.

Zedella first contends that Robert made some of the subsequent insurance payments for the car. As stated above, Robert admits that he arranged for the insurance carrier and later paid some of the insurance premiums but insists this arrangement was not ongoing. We do not believe that such payments, whether by gift or compensation for work performed, rise to the level necessary to satisfy a finding of superior control by Robert over Daniel's use of the vehicle. It is undisputed that Daniel was living away from home, in a different State, at the time of the accident. The car was kept at Daniel's Carbondale address and was used by Daniel as his own vehicle. These facts show that Daniel, not Robert, had a superior right of control over the vehicle at the time of the accident.

Zedella next contends that Robert maintained control over certain accounts that the Gibsons originally established for Daniel's personal and educational expenses. The accounts were in the names of Daniel and his parents. In later years, Daniel's compensation for work performed in the family business was also deposited in these accounts. Although Robert retained the authority to draw on these funds, the record does not show that

the money belonged to Robert or that Robert could have rightfully deprived Daniel of these funds. In fact, Daniel also contributed to these accounts and was the designated taxpayer on them. From his personal account, Robert assisted Daniel financially while in college, but Daniel also earned an income from his work at the family business and from other employment. We are not persuaded that these financial arrangements demonstrate Robert's superior right of control over Daniel's use of the vehicle in question.

As further support for his contention that Robert maintained control over Daniel's driving, Zedella observes that Robert had once demanded and received the keys to Daniel's previous car while Daniel was an adult. We note, however, that Daniel's driver's license was suspended at the time of the incident to which Zedella refers. That Daniel had no legal right to drive at that time sharply diminishes the import of his surrendering the keys to his father. Moreover, during the time that Daniel was a co-owner of the car involved in this case, no argument can reasonably be made that Robert had a legal right to request the keys to the car, or that Daniel would have been under a legal obligation to surrender them.

Finally, Zedella directs our attention to two cases in which liability was found against co-owner parents: *McCart v. Muir* (1982), 230 Kan. 618, 641 P.2d 384, and *Mettelka v. Superior Court* (1985), 173 Cal. App. 3d 1245, 219 Cal. Rptr. 697. Although both cases involve a parent-child relationship, we find these cases to be distinguishable.

In *McCart*, the Supreme Court of Kansas held that a co-owner father was liable for negligently entrusting a vehicle to his minor son. (*McCart*, 230 Kan. at 621-22, 641 P.2d at 388.) The driver in *McCart* was 17 years old at the time of the accident and lived with his parents.

There was evidence that the son had been involved in four accidents within six months prior to the accident in question, had received three traffic citations for moving violations within four months prior to the accident in question, and had been convicted of reckless driving within five days of the accident. In finding sufficient evidence to establish negligent entrustment, the court stated:

> "Stephen [the co-owner son] was not an emancipated child. He remained under the control of his parents. The automobile was being operated with the permission of the father. It is inconceivable that the father did not know of the wrecks and prior convictions on moving violations." *McCart*, 230 Kan. at 621, 641 P.2d at 388.

In *Mettelka*, a case cited by the appellate court below, the California court of appeals held that a cause of action was stated against a co-owner father for negligently entrusting a vehicle to his son. (*Mettelka*, 173 Cal. App. 3d at 1250, 219 Cal. Rptr. at 700.) The driver lived at home with his father, who had allegedly paid for the car and its insurance. (*Mettelka*, 173 Cal. App. 3d at 1247, 219 Cal. Rptr. at 698.) The *Mettelka* opinion does not refer to the son's age, but the plaintiff alleged in that case that the father had actual power over the son's use of the vehicle. *Mettelka*, 173 Cal. App. 3d at 1247, 219 Cal. Rptr. at 698.

The *Mettelka* court based its decision, however, on an earlier case involving a California statute that imposed vicarious liability on an automobile owner for injuries caused by the negligent operation of the vehicle by another person with the express or implied permission of the owner. The earlier case found that one co-owner could be liable under the statute for the negligence of another co-owner, and *Mettelka* extended that result to actions involving negligent entrustment.

Illinois does not have a vicarious liability statute. One remotely similar Illinois statute, which pertains to

criminal liability for permitting a driver under the influence to operate a motor vehicle, specifically excludes co-owners from its reach. (See 625 ILCS 5/6—304.1 (West 1992).) Thus, the *Mettelka* court relied upon case law interpreting a vicarious liability statute that has no analogue in Illinois. Section 308 of the Restatement (Second) of Torts provides the proper threshold for determining whether an entrustment has occurred in Illinois.

*Peterson v. Halsted* (Colo. 1992), 829 P.2d 373, is instructive. In *Peterson*, the Supreme Court of Colorado upheld a grant of summary judgment in favor of the defendant parents. The *Peterson* court refused to hold a mother and co-owner father liable for negligently entrusting a vehicle to their daughter, despite her prior conviction for driving under the influence of alcohol and her parents' awareness of her alcohol problem of several years' duration. The *Peterson* court emphasized that the daughter was 25 years old, did not live with her parents, and provided her own means of support. (*Peterson*, 829 P.2d at 376, 379.) Furthermore, the *Peterson* court stressed that nearly three years had elapsed between the time the father cosigned the loan for the purchase of the vehicle and the time of the fatal accident. (*Peterson*, 829 P.2d at 379.) As Robert points out, nearly three years have also elapsed between the time he cosigned the loan for the purchase of the vehicle and the time of his son's accident.

As a final matter, we note that Daniel owned a car prior to his purchase of the vehicle involved here. If his father had refused to cosign the purchase money loan, Daniel might have kept his old car, bought a different car, or obtained the credit he needed elsewhere. Therefore, it is speculative at best to say that, but for Robert's agreement to cosign the loan, Daniel would not have enjoyed the possession and use of a vehicle, or that the

streets of Carbondale would have been safer in April 1990, when the accident occurred.

Because, as a matter of law, Robert could not have entrusted the vehicle to Daniel as that term is defined in our law, we conclude that Zedella's claim against Robert for negligent entrustment was properly dismissed by the trial judge.

For the reasons stated, we reverse the judgment of the appellate court, affirm the judgment of the circuit court, and remand the cause to the circuit court of Jackson County for further proceedings.

*Appellate court reversed;*
*circuit court affirmed;*
*cause remanded.*